## Conlan v. Ford Motor Company

*Joseph A. Malloy, Jr.*, for plaintiff.
*John E. Flaherty, Jr., Jeffrey G. Weil* and *Arthur W. Hankin*, for defendant.

GREENBERG, *J.*, February 17, 1978—This matter is before the court on defendant Ford Motor Company's preliminary objections in the nature of a demurrer to plaintiff's complaint for failure to commence action within the nonwaivable four-year limitations period.

This action arises from plaintiff's purchase of a Ford motor vehicle (hereafter truck) from defendant Liberty Ford Truck Sales, Inc. in February, 1972. Plaintiff rejected said truck in April of 1972 because it did not meet the specifications set forth by plaintiff. In July of 1972, plaintiff took delivery for a second time after being informed by defendant

that the vehicle had been checked by a factory representative of defendant, Ford Motor Company, and that it was in perfect condition and met plaintiff's special requirements, and paid defendant, Liberty Ford Truck Sales, Inc. the purchase price in full.

Plaintiff had trouble with the truck on different occasions. In October of 1972, the transmission burned out and the truck was returned to defendant for repairs. In September of 1973, the truck's transmission again burned out and it was returned to defendant a second time for repairs. In August and November of 1974, the engine of the truck burned out. In December of 1975, the transmission again failed. Finally in July and December of 1976, the engine again burned out.

Plaintiff alleges that when he ordered the truck, defendant knew that the truck was essential to plaintiff's business and the type of work in which plaintiff was engaged and further the stress the truck would be subjected to during its operation. Defendant warranted, plaintiff contends, that the engine and transmission would be capable of carrying loads of up to 10,000 pounds. It is averred by plaintiff that defendant, Ford Motor Company, breached an implied warranty of fitness for a particular purpose for which plaintiff required the said truck since defendant knew that plaintiff was relying on its skill and judgment to furnish a suitable truck and said truck was not fit for the purpose for which it was sold. As a result of the breaches of warranty by defendants, plaintiff avers that he suffered damages in the sum of $6,000 for repairs, in addition to the cost of rental of a substitute truck, and loss of business and profits and expenses related to the disabled truck.

Defendant, Ford Motor Company, demurs to the complaint based on the applicable four-year statute of limitations for actions based on warranties, contained in the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12A P.S. §2-725, which reads:

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. . . ."

Defendant further alleges that plaintiff's complaint in assumpsit for the alleged breach of an implied warranty of fitness for a particular purpose attempts to state a cause of action for the alleged breach of a contract for sale under the Uniform Commercial Code and that a cause of action for breach of any contract for the sale of goods must be commenced within four years after the cause of action accrued. It contends that the cause of action accrued in April of 1972, when the truck was first delivered; thus the complaint should be dismissed since it was filed January 19, 1977, outside of the allowable four-year period. It further avers that even if there had been an express warranty as to "future performance," the limitations period would have begun to run by October of 1972, when the vehicle allegedly malfunctioned for the first time.

They seek dismissal of the complaint on this alternative ground.

Plaintiff, in his answer to defendant Ford Motor Company's preliminary objections submits that the allegations of the complaint clearly demonstrate that the warranty made by defendant was very clearly a prospective one extending to future performance and thus the statute of limitations would not begin to run until plaintiff had an opportunity to discover the breach, as set forth in section 2-725(2). The complaint alleges that Ford Motor Company was apprised of the kind of use that the truck would be subjected to and that the truck would perform satisfactorily when used in that manner. Moreover, plaintiff avers it cannot reasonably be maintained that discovery of the breach should have taken place when the truck's transmission failed for the first time in October of 1972. He argues that in a vehicle with as many moving parts as a truck, a single failure of one of the drive-train components could not fairly be said to suggest that the entire vehicle is unsuited for certain kinds of use; it is only after repeated failure that such unsuitability becomes apparent.

In plaintiff's new matter, he alleges that defendant installed a new power train and transmission in plaintiff's truck in September, 1973. Thus, he contends the statute of limitations commenced to run in September of 1973 and expired September, 1977. Since the action was instituted on January 19, 1977, the action was properly within the allowable four-year period.

It is generally recognized in Pennsylvania that the four-year period is calculated from the date of the breach of the warranty, and such breach occurs at the time of delivery and not when any personal or

property damage results: Rufo v. Bastian-Blessing Co., 417 Pa. 107 (1965); Hoffman v. A.B. Chance Co., 339 F. Supp. 1385 (M.D. Pa. 1972).

In the case of Irons v. Ford Motor Co., (Mem. opinion and order filed in E.D. Pa. March 2, 1977, No. 76-3561) suit was instituted in November of 1976 alleging a breach of warranty in the manufacture of an automobile purchased in 1964. It was maintained that defendant improperly manufactured a gear shift lever thereby breaching an implied warranty of merchantability and fitness for use, causing an accident in July of 1973 resulting in injuries. The issue focused on by the court was when the four-year statute of limitations under the Uniform Commercial Code began to run, defendant contending that it began to run as of the date of delivery of the automobile, while plaintiff averred that the cause of action did not accrue until discovery of the defect. The court, by the Hon. Charles R. Weiner, said: "We cannot agree with plaintiff, but instead find that the cause of action accrued as of the date of the sale of the automobile and, therefore, the four-year period for filing a claim under warranty has long since expired."

In the instant case, delivery of the truck was initially made in April of 1972, therefore the statute of limitations began to run at this time and expired in April of 1976. Since the complaint was not filed until January 19, 1977 it was outside of the four-year limitations period: Section 2-725(1), Rufo, supra; Hoffman, supra; Irons, supra.

Plaintiff further contends that defendant, Ford Motor Company, was aware that the truck was essential to plaintiff's business and the type of use the truck would be subject to and defendant warranted the truck would meet plaintiff's special require-

ments. He avers that the warranty presented by defendant was clearly a prospective warranty extending to future performance and as such, the four-year statute did not begin to toll until future performance provided opportunity to discover the breach in accordance with section 2-725(2). Plaintiff alleges that Ford Motor Company was apprised of the kind of use that the truck would be subjected to and that the truck would stand up to that use when it occurred. He relies on Perry v. Augustine, 37 D. & C. 2d 416 (1965), for support of this proposition.

In Perry, supra, the allegedly defective product was a heating system. The seller had warranted the system would "be able to heat at 75° inside at a −20° outside temperature." The time of tender was July, 1961. The court decided that the statute did not begin to run as of that date because the warranty explicitly extended to future performance of the goods.

The court stated: "Here, the warranty in question relates to what the heating system sold and delivered in June and July, 1961, would do in the future, i.e., when it was tested under subzero temperature conditions. Discovery of a breach of that kind of a warranty in this climate would necessarily have to await winter weather."

Whether the warranty in Perry, supra, in fact extended to the future performance of the goods is unclear. The court's rationale is that discovery of the breach would have to await the future performance of the goods, and therefore the warranty was explicitly prospective. Obviously a warranty as to a heating system would have to await its initial use and when same is sold in the summertime the warranty is prospective in that it become effective in

the winter heating season. It would obviously be unfair as well as unjust to charge a buyer with discovering a defect in a system which was not used nor was it intended to be used until sometime after the sale was completed. This certainly is not the situation in the instant case.

In reference to the "future performance" portion of section 2-725(2), White and Summers, in their treatise on the Uniform Commercial Code, at section 11-8 (1972), said that:

"[I]t should be clear that this extension of the normal warranty period does not occur in the usual case, even though all warranties in a sense apply to the future performance of goods. The . . . portion of 2-725(2) applied only in a case in which the warranty 'explicitly extends to future performance.' Presumably such a case would be one in which the seller gave a 'lifetime guarantee' or one in which he, for example, expressly warranted that an automobile would last for 24,000 miles or four years whichever occurred first. If the automobile failed in the 20,000th mile and after three years of driving the buyer (if he had no notice or knowledge of the defect prior to the failure) would have four years from that date to commence suit notwithstanding that his suit would then be brought seven years after the sale had occurred."

In the instant case, there was never a warranty extending to future performance. There is nothing on the record that shows that such a warranty was extended. Repeated failures of the truck's moving parts and defendant's continued willingness to repair the truck is not evidence of the existence of a warranty extending to future performance: Lewis v. Jacobsen, 30 D. & C. 2d 623 (1962).

The fact that a warranty for fitness for a particular purpose might have been involved does not make such a warranty one which extends to future performance. In Matlack v. Butler Manufacturing Co., 253 F. Supp. 972 (E.D. Pa. 1966), plaintiff purchased 50 cement trailers from defendant. Plaintiff alleged that shortly after delivery of the initial trailer, numerous defects arose in the engine causing it to expend money to repair, modify, replace and improve the engine and equipment damaged by the malfunctioning of said engine. The complaint was filed four years, five months and eleven days after delivery of the last trailer involved; therefore, the question was whether there was a warranty of future performance given by defendant. Plaintiff in support of its allegation that a warranty of future performance was extended by defendant referred to a letter from defendant indicating that it proposed to furnish a CV 4-180 Hercules engine and defendant's specification of November 30, 1959, indicating a proposed use of the Hercules engine . . .

The court in dismissing the complaint said: "None of these instances present circumstances indicating that [defendant] explicitly warranted any future performance of the engines. In fact, it is doubtful whether [defendant] warranted anything at all in these instances which would be of contractual significance."

Even if plaintiff could make out a claim that defendant issued an explicit warranty as to continuous performance, his action was barred as of October, 1976, which is four years after plaintiff allegedly discovered a malfunction of the vehicle. Knowledge of the breach is had after the initial failure not after repeated failure: Lewis, supra. In

Lewis, supra, the court looked to the initial failure of the product to calculate the commencement of the four-year period, even though repeated failures occurred. Lewis involved a potato harvester purchased on August 6, 1956, which failed to operate properly during both the 1956 and 1957 harvest season. Plaintiff instituted suit in March of 1962, claiming a number of express warranties and claimed further that there was a breach of an implied warranty of fitness of purpose arising out of defendant's knowledge of the area where the harvester was to be used and the use for which plaintiff acquired it. In dismissing the complaint the court said, at p. 625, in referring to section 2-725(1):

"These provisions necessarily dispose of the problem, for even if it be considered that the breach of warranty was not discovered and could not have been discovered until the 1957 harvest, the statute would have run during the potato harvesting season of 1961, months before the action was actually instituted." A similar result was reached in the case of Bobo v. Page Engineering Co., 285 F. Supp. 664 (W.D. Pa. 1967).

Therefore, since the complaint was not filed within the allowable four-year statute of limitations, we sustain defendant Ford Motor Company's preliminary objections and dismiss the complaint.

### ORDER

And now, February 17, 1978, defendant Ford Motor Company's preliminary objections in the nature of a demurrer to plaintiff's complaint for failure to commence action within the nonwaivable four-year limitations period are sustained and plaintiff's complaint is dismissed.